**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         jwilner@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS COHEN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　Plaintiff,<br>　　v.<br><br>CARL'S JR. RESTAURANTS, LLC,<br><br>　　　　　　　　　　　Defendant. | Case No.   2:24-cv-2299<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

CLASS ACTION COMPLAINT

Plaintiff Travis Cohen ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Carl's Jr. Restaurants, LLC ("Defendant" or "Carl's Jr."). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit brought against Carl's Jr. for aiding, agreeing with, employing, procuring, or otherwise enabling the wiretapping of the electronic communications of visitors to its California drive-thru locations that employ the use of a drive-thru ordering assistant by Presto Automation, Inc. ("Presto").

2. Specifically, Defendant aids, agrees with, procures, or otherwise enables Presto to collect information from visitors who use its automated drive-thru assistant to order food at Carl's Jr. restaurants.

3. Unbeknownst to consumers, their communications are routed through the servers of, and are used by, Presto to, among other things, assist Defendant with fulfilling orders and to improve the capabilities of Presto's technology.

4. The nature of Presto's licensing agreements with Defendant are such that Defendant "aids, agrees with, employs, or conspires" to permit Presto to read, attempt to read, learn, and/or use the communications of Carl's Jr. customers without prior consent, thus violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a).

5. Plaintiff brings this action on behalf of all persons who ordered at a Carl's Jr. in California via the automated drive-thru assistant, and whose communications were intercepted and recorded by Presto.

## PARTIES

6. Plaintiff Travis Cohen is a citizen of California residing in Valley Village, CA. In or around February 2024, Plaintiff Cohen ordered via the Drive-Thru at a Carl's Jr. restaurant in Van Nuys, California. During that interaction, Defendant used Presto's automated drive-thru ordering assistant, Presto Voice, to process his order. As Plaintiff gave his order to the automated assistant (*i.e., in real time*), Presto- as aided, agreed with, employed, and procured by Defendant—wiretapped Plaintiff's communication with Defendant. Plaintiff was not on notice of any wiretapping when he gave his order to the automated order assistant, nor did he provide prior consent to the same.

7. Defendant Carl's Jr. Restaurants, LLC is a Delaware Corporation with its principal place of business at 6700 Tower Circle, Suite 1000, Franklin, TN. Defendant operates fast food restaurants, including Carl's Jr. restaurants, throughout California and the United States.

## JURISTICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

9. This Court has personal jurisdiction over Defendant because Defendant conducts significant business in California, as there are over 600 Carl's Jr. restaurants in California.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

# FACTUAL ALLEGATIONS

**Overview of the Wiretaps**

11. Presto Automation, Inc. is a Software as a Service (SaaS) company that provides "enterprise-grade [Artificial Intelligence] solutions for the nation's largest hospitality brands."[1] Its products use "automation and voice AI technology improves order accuracy, reduces labor costs, and increases revenue" for restaurants.

12. One way Presto does this is with "Presto Voice," a voice automation platform that is installed in the drive-thru systems of fast-food restaurants.[2] Presto voice automates the process of taking the drive-thru order by implementing an automated voice assistant capable of taking the order and relaying it to the restaurant team, who prepare the food.

13. In May 2023, Presto announced a plan to partner with CKE Restaurant Holdings, Inc., the parent company of Carl's Jr. and Hardee's restaurants, to deploy Presto Voice to Carl's Jr. and Hardee's restaurants across the country.[3]

14. Since that time, Presto Voice has been integrated into the drive-thru at hundreds of Carl's Jr. restaurants, including many in California.

15. Presto Voice is designed in such a way that consumers believe they are only interacting with the specific Carl's Jr. restaurant where they are placing and picking up their drive-thru order. Customers are not notified prior to placing their order that their communications with specific Carl's Jr. restaurants are being intercepted by any third party.

---

[1] Presto and CKE Restaurants Announce Drive-Thru Voice AI Automation Partnership https://investor.presto.com/news-releases/news-release-details/presto-and-cke-restaurants-announce-drive-thru-voice-ai (Last accessed March 18, 2024).

[2] Automate your drive-thru with Presto Voice https://presto.com/drive-thru/ (Last accessed March 18, 2024).

[3] Presto and CKE Restaurants Announce Drive-Thru Voice AI Automation Partnership https://investor.presto.com/news-releases/news-release-details/presto-and-cke-restaurants-announce-drive-thru-voice-ai (Last accessed March 18, 2024).

1  16. Following an investigation by the Security and Exchange Commission (SEC), Presto admitted in SEC filings that it sends over 70% of customer communications with Presto Voice to "off-site" agents, meaning employees of Presto receiving customer communications via Presto's servers, who help train the AI system and ensure order accuracy.[4]

17. Once Presto intercepts the drive-thru customers' communications, it has the ability to use such communications for its own purposes. Presto, in part, uses its off-site agents to improve its Presto Voice technology. Presto's stated goal in using the off-site agents to review intercepted communications "is to continue to reduce our reliance on human agent intervention, while advancing our AI capabilities and maintaining our high [rate of non-intervention by staff of customer restaurants]."[5]

18. Continued sales of the Presto Voice technology and service is based on Presto's ability to improve its software capabilities and reduce the need to employ its off-site agents to monitor and correct orders so it can "offer a more robust, adaptable and accurate service" to future customers.[6]

19. Information from communications, like Plaintiff's, is central to Presto's ability to successfully market Presto voice to future clients.

20. In sum, Presto has the capability to use website communications to (i) improve its own products and services; (ii) develop new Presto products and

---

[4] AI-Powered Drive-Thru Is Actually Run Almost Fully by Humans https://www.bloomberg.com/news/articles/2023-12-07/ai-fast-food-drive-thrus-need-human-workers-70-of-time?accessToken=eyJhbGciOiJIUzI1NiIsInR5cCI6IkpXVCJ9.eyJzb3VyY2UiOiJTdWJzY3JpYmVyR2lmdGVkQXJ0aWNsZSIsImlhdCI6MTcxMDU0MzA0OCwiZXhwIjoxNzExMTQ3ODQ4LCJhcnRpY2xlSWQiOiJTNDhBUTBMEcxS1cwMCIsImJjb25uZWN0SWQiOiJDRjI2RDVCNUJCRkQ0MDRDOTQ0MzY2QTJCNTMwNjA3OSJ9.p1TydtsGsxuA4yBKqs7UApxy8vA--dkjMvKFcMuUwhM (Last

[5] The Role of Humans in a Voice AI Drive-Thru https://presto.com/the-role-of-humans-in-a-voice-ai-drive-thru/ (Last accessed March 19, 2024).

[6] *Id.*

services; and (iii) analyze drive-thru customers communications to assist with avoiding the intervention of restaurant staff in the order process.

**Defendant Aided, Agreed With, Employed, Procured, Or Otherwise Enabled Presto's Wiretapping of Plaintiff's Communications**

21. As described above, Presto collects the communications of visitors to Defendant's drive-thru windows.

22. The purpose of this invasion of privacy is straightforward: Presto collects the communications to send to its off-site agents.

23. This is valuable to Defendant because it saves Defendant money on the cost of labor to staff the drive-thru ordering service, even when the Presto Voice system is not processing orders correctly.

24. In addition to helping companies like Defendant process their Drive-thru orders, Presto aggregates this information with the information collected from all customers employing Presto Voice at their restaurants to improve the functionality of Presto Voice, which increases the value of Presto's services when they are offered to other companies.

25. Thus, the agreement for Defendant to aid in Presto's wiretapping of Plaintiff's and Class Members' communications is done for the purpose of improperly increasing the efficiency of Presto Voice and, by extension, the profits of both parties.

26. Presto does not record the communications for the sole benefit of Defendant; instead, it uses (or has the capability to use) the information obtained for its own benefit.

## CLASS ALLEGATIONS

27. Plaintiff seeks to represent a class of all California residents all persons who ordered at a Carl's Jr. in California by using the automated drive-thru assistant and whose communications were intercepted and recorded by Presto during the statute of limitations period (the "Class").

28. Excluded from the Class are: (i) Defendant and its officers, directors, employees, principals, affiliated entities, controlling entities, and other affiliates; (ii) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (iii) the Judge(s) assigned to this case and any members of their immediate families.

29. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of members of the Class and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

30. There is a well-defined community of interest in the common questions of law and fact affecting Class members. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class. Common legal and factual questions include, but are not limited to, whether Defendant has violated the CIPA and whether members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

31. The claims of Plaintiff are typical of the claims of the Class because the Plaintiff, like all other class members, visited Defendant's drive-through and had his electronic communications intercepted and disclosed to Presto.

32. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

33. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class. Each individual member of the

Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

34. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## COUNT I
## VIOLATION OF CIPA § 631

35. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

36. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

37. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph

> or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

38. CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications").

39. Presto Voice is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

CLASS ACTION COMPLAINT                                             8

40. Presto is a "separate legal entity that offer[] [a] 'software-as-a-service' and not merely [] passive device[s]." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, Presto had the capability to use the wiretapped information for its own purposes. Accordingly, Presto was a third party to any communication between Plaintiff and Class Members on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ*, LLC, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

41. At all relevant times, by using the network, Presto willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Class Members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

42. At all relevant times, Presto used or attempted to use the communications intercepted by Presto Voice to improve its products and services and generate revenue for itself and its clients.

43. At all relevant times, Defendant aided, agreed with, employed, or otherwise enabled Presto to wiretap consumers using Presto Voice and to accomplish the wrongful conduct at issue here.

44. Plaintiff and Class Members did not provide their prior consent to Presto's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff and Class Members' communications. Nor did Plaintiff and Class Members provide their prior consent to Defendant aiding, agreeing with, employing, or otherwise enabling the Presto's conduct.

45. The wiretapping of Plaintiff and Class Members occurred in California, where Plaintiff and Class Members ordered from Carl's Jr. drive-thru locations and where Presto, as enabled by Defendant, routed Plaintiff's and Class Members' communications to Presto's servers.

46. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For judgment in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded; and

(f) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: March 20, 2024          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  /s/ *L. Timothy Fisher*
         L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)

|   |   |
|---|---|
| 1 | 1990 North California Blvd., Suite 940 |
| 2 | Walnut Creek, CA 94596 |
|   | Telephone: (925) 300-4455 |
| 3 | Facsimile: (925) 407-2700 |
|   | E-mail: ltfisher@bursor.com |
| 4 | jwilner@bursor.com |

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT                                       11